**FOX v. FOX.**

No. 14934.

Court of Civil Appeals of Texas.
Fort Worth.

March 26, 1948.

Rehearing Denied April 23, 1948.

Gean B. Turner, of Cleburne, and Allen Crowley, of Fort Worth, for appellant.

James H. Knapp, of Arlington, and Samuels, Brown, Herman & Scott and Ardell M. Young, all of Fort Worth, for appellee.

HALL, Justice.

Appellee, Cecil Adrian Fox, filed suit against his wife, Inez Winona Fox, appellant herein, for divorce in a District Court of Tarrant County, Texas, seeking community property settlement and custody of their infant child, Cecil Wayne Fox, then six months of age. Appellant filed a cross action seeking similar relief and upon a trial to the court she recovered judgment for divorce and a satisfactory community property settlement, but she brings this appeal because she is dissatisfied with the court having granted custody of her six months old child to strangers, to-wit: Mr. and Mrs. O. D. Head, of Tarrant County, Texas, and complaining further of the judgment because there was no contribution awarded to the child for its support and maintenance.

In her points one and two she charges error of the court in disallowing her the custody of the child and giving said custody to strangers when there was insufficient evidence to show that she, as mother of said infant, was an improper or unfit person or otherwise disqualified to have custody of her infant child, when in truth and in fact the undisputed evidence shows that she was of good moral character and a fit and proper person and well qualified to have the custody of her child.

Point three embraces a complaint against the judgment of the trial court in not providing support and maintenance for said child from his father, to-wit: the appellee.

Appellee testified concerning his marriage to appellant to the effect that while he was overseas he received a letter from appellant which indicated that she was keeping company with other men, but after appellee returned home he and appellant lived together as husband and wife and there was born to them the child in question; that his wife's attitude was that she did not love children; that he brought his wife and baby to the Heads' home in Fort Worth, when the baby was about three weeks old; at that time the baby was undernourished and in bad health. Mrs. Head is a sister of appellee and appellant insisted that appellee allow his sister, Mrs. Head, to adopt said child; that she stayed with the Head family and her baby for about three weeks and then voluntarily went to her mother's home, leaving the baby with Mrs. Head. That she stayed away about a week and when she returned she left within a few days and stayed away about three weeks. That appellant is nervous, excitable, contentious and quarrelsome; that Mrs. Head is fond of the child and she and her husband would be good foster parents for same. That appellant was subject to slight attacks of epilepsy and that she was not a fit person to rear the baby because of such spells.

Mr. and Mrs. Head both testified in effect that appellant was willing to give the child to them and that they would take the best care of it; they further testified that

appellant did not seem to be interested in the child, that they were both attached to the child.

A neighbor, Mrs. E. A. Sarcy, testified that when she first saw the baby she was afraid it would not live, that appellant took no responsibility of the child and depended on Mrs. Head to take care of it. She further testified that appellant is not a natural mother, that she never saw her fondle, kiss or play with the baby, and that both Mr. and Mrs. Head were proper and suitable persons to take care of the child.

A Mrs. J. A. Whitt testified that she heard the appellant say, "Well, every time I get near the baby it starts to bawling—well, it don't make any difference, because the baby is going to be—auntie is going to be its mama."

Appellant denied all of the accusations made against her except she did admit that she had epileptic fits before her child was born but that she had only experienced one attack since; that childbirth had assisted her health very much along this line

Testimony was introduced in behalf of appellant by citizens from Bosque County, where appellant was reared, to the effect that she as well as her entire family were good law abiding citizens, that they knew Mrs. Fox's reputation for chastity and morality and that it was the very best and that she was a good mother to the baby. Appellant and her father testified that arrangements had been made to provide a home for both her and the baby with her parents. There was testimony to the effect that appellant was thrifty, young and saving, and that she was capable of providing for and taking care of the child.

The court did not find that appellant was incompetent or unfit to take care of her infant child. The facts show that Mr. and Mrs. Head have been married thirty years, that Mr. Head is a barber and that Mrs. Head was forty-seven years of age at the time of the trial.

■ While the law in this kind of a case involving custody of minor children vests a broad and discretionary power in the trial judge while naming the custodian of children as he may deem for their best interest and welfare, however, this discretionary power is inferior to the presumed law that the best interest and highest welfare of the child will be best served by permitting it to remain in the custody and under the care of its natural parents. Therefore, the court cannot as a matter of discretion destroy the ties between parent and child unless it be shown substantially to the effect that neither parent is a fit subject, either morally, mentally or physically, to take care of the child.

■ After very careful consideration of appellee's testimony, viewed from the light most favorable to it, we think the same as a whole is insufficient in law to rebut and overcome the legal presumption above announced according to the cases hereinafter cited.

Where the contest is between a parent and an outsider, the law pertaining to such case to the effect that the custody will not be awarded to an outsider unless it is shown there is some positive disqualification of the parent, was settled as far back as 1900 by the Supreme Court in the case of State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901. This law has been followed since that time consistently.

The Commission of Appeals in Greenlaw et al. v. Dilworth et al., 299 S.W. 875, held in substance that where the mother had written and received erotic letters would not authorize the court to declare her unfit for a daughter's custody as a matter of law and that the court must view the evidence in the light most favorable to the parent in determining custody of the child as against an outsider; that bad temper as a matter of law is no disqualification of the custodian, and that in general the child's welfare and the parent's fitness commonly rest in the natural relation which may not be disturbed save by that rebuttal which exhibits positive disqualification of the parent.

In Swift v. Swift, Tex.Civ.App., 37 S.W. 2d 241, it was held that an award of custody of minor children is subject to review on appeal notwithstanding the trial court's large discretion.

■ In 31 Tex.Jur., p. 1294, it is stated as follows: "The mere fact that a parent is not as well able to give to the child the

comforts and advantages which other persons might give does not deprive him or her of the right to custody. As has been well expressed 'Poverty short of want and wealth above requirements of ordinary comfort may equally be a blessing or a curse in relation to the welfare of childen as in respect to the life of adults.' At least within the median range, there is utter rejection of available worldly possessions as a measure of a child's welfare or as the test of a custodian's worth."

The Supreme Court of this state laid down the rule again in the case of Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282, to this effect: "Ordinarily, the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another."

In the case of Futch v. Futch, Tex.Civ. App., 299 S.W. 289, it is stated the natural affection between a child and its parents constitutes a strong impulse toward good conduct and correct living; it is superior to wealth, honor or power.

In the case of Hammond et ux. v. Chadwick et ux., Tex.Civ.App., 199 S.W.2d 547, it was held that even though the parents had given the child away and adoption proceedings had started that said parents should have a right to withdraw such gift and consent for adoption and that the best interest of the child would be served for it to be replaced in the care and custody of its parents, and it is there stated that should the appellants at any time become unfit to care for the child that it may be removed from them by and through the Juvenile Court, but so long as the parents are proper persons to have possession of the child, they should be permitted to do so in order to perform the responsibility placed upon them by the law in rearing said child. See also Cass v. Cass, Tex.Civ.App., 193 S.W. 2d 279.

We are not confronted, however, here with a situation like that contained in the case of Austin et al. v. Collins et ux., Tex. Civ.App., 200 S.W.2d 666, writ refused, no reversible error, where there had been in a prior proceeding an adoption of the child pursuant to Articles 46a, 46b, Vernon's Ann.Civ.St.

Even though we are sure the action taken by the trial court in removing the child from the custody of its parents and placing it in the home of strangers was prompted solely by a desire to do that which he thought was for the best interest of the child, yet such presumption does not override the law governing such matters to the effect that the trial court is required to award the child's care and custody to its parents unless the evidence shows that the parents are disqualified to have the custody of said infant child. It is our opinion that the best interest of a child so young requires that he receive as near the normal amount of maternal care as possible and that such care can come from the mother to a greater extent than from strangers. See Redwine v. Redwine et al., Tex.Civ. App., 198 S.W.2d 472.

The judgment of the trial court is affirmed in granting a divorce to appellant and in its property settlement; it is reversed and remanded for trial upon the question of support and maintenance of the child by appellee; that portion of the judgment granting the custody of the child to Mr. and Mrs. O. D. Head is reversed and judgment is here rendered decreeing such custody to the appellant, with suitable privileges of visitation by appellee, the father.

The costs accrued in the trial court and in the appellate court are taxed against appellee.